

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6499 | **DATE** | 10/22/2002 |
| **CASE TITLE** | Betty Strong vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment [9-1] is granted and defendant's motion for summary judgment [11-1] is denied. It is hereby ordered that this case is reversed and remanded to the Commissioner for further determinations consistent with the attached Memorandum Opinion and Order. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 23 2002 date docketed | |
| | Notified counsel by telephone. | | | 15 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 10/22/2002 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| KF courtroom deputy's initials | | Date/time received in central Clerk's Office | KF mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETTY STRONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 6499 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| JO ANNE BARNHART, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |



MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The plaintiff, Betty Strong ("Strong") has brought a motion for summary judgment seeking judicial review of the final decision of defendant Jo Anne Barnhart, who denied Strong's claim for disability insurance benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. §§ 416 (i), 423 (d). Strong now appeals that decision in federal court as permitted by Section 405(g) and Section 1383(c)(3), which grant federal courts the power to review the Social Security Commissioner's final decisions. Both sides now move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, with Strong alternatively requesting a remand for a new hearing. For the foregoing reasons we reverse and remand the case for further determinations consistent with this opinion.

## Procedural History

Plaintiff filed an application for DIB on September 5, 1995, alleging disability dating back to June 30, 1995. (R. 53-55). Strong later amended the date of disability to

April 30, 1996. (R. 276). Strong's claim was denied. On May 15, 1997, an administrative disability hearing was held before Administrative Law Judge ("ALJ") Rodney Haworth, who issued an adverse decision denying plaintiff disability benefits. (R. 12-22). Strong filed a timely request for review before the Appeals Council, which denied Strong's review, making the decision of ALJ Haworth the final decision of the Administration. (R. 7-9). Strong filed suit in the Northern District of Illinois, and on January 27, 2000, Judge Zagel remanded the case to the Commissioner. On December 29, 2000, ALJ McGuire held a second hearing in which he again denied plaintiff DIB. ALJ McGuire found that in his opinion, Strong retained the residual functional capacity[1] ("RFC") to perform the requirements of work except lifting more than fifty pounds occasionally or twenty pounds frequently. (R. 234). ALJ McGuire concluded that Strong could perform her past relevant job as a circuit board assembler, and was not disabled. (R. 224-235). Strong again requested review before the Appeals Council, but the Council declined to assume jurisdiction over the ALJ's decision. (R209-210). Thus, the decision of ALJ McGuire became the final decision of the Commissioner of Social Security. See *Zurawski v. Halter*, 245 F.2d 881 (7th Cir. 2001); Reg. § 416.1481.

### Plaintiff's Testimony

At the time of the December 29, 2000 hearing before ALJ McGuire, Betty Strong was a fifty-four year old female who had completed eleven years of primary and secondary education. (R. 191). Strong was approximately five feet five inches tall, and

---

[1] "Residual functional capacity" is that which a claimant can still do despite his physical and mental limitations. *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999); 20 C.F.R. §404.1545(a).

weighed approximately 110-115 pounds. (R. 193). She testified that her worst problem was a sharp pain in the top part of her leg at the hip, and falling episodes. (R. 257-258). Strong testified that she got the leg pain a couple times a week for four to five minutes each time, and that she fell once a week. (R. 258). Strong also stated she has problems holding objects in her hands, especially the right, because they fail without her knowing it. (R. 259). Strong stated that she got tired after twenty minutes of standing, and that she could walk maybe one-half of a block before she had to stop and rest. (R. 259-260). Strong had to carry items like a quart of milk in her arms instead of her hands because they would fall out of her hands (R. 259). Strong also complained that she got chest pains whenever she gets tired, which she states is several times a day. (R. 260). She stated that she stopped driving in 1995 because she could not feel the steering wheel at times. (R. 261). Strong stated that she had memory problems, and that she seemed to forget things that happened on previous days. (R. 262). Strong spent most of her days either sitting up or lying down to watch television. (R.262). Strong's daughter did the laundry, cleaned the house, and prepared the family's meals. (R. 262). Strong's husband shopped for groceries, and helped his daughter with the house cleaning. (R. 262). Strong testified that from 1989 to 1990 she worked as a circuit board assembler, which required washing the five-pound boards and putting parts on the board. (R. 266). From 1993 to 1995, Strong worked with Motorola as a CMO[2] operator, putting parts on small circuit boards and carrying a skid of boards weighing 30 to 40 pounds twice a day. (R. 267).

---

[2] The parties do not define "CMO", but it appears to be an internal Motorola designation dealing with circuit-board assembly.

## Plaintiff's Medical Examinations

In March 1995, Saeed Kahn, M.D. examined Strong and concluded that she was suffering from lupus, carpal tunnel, and that she had a positive Tinel's sign. (R. 146). Dr. Kahn referred Strong to have an anti-nuclear antibody ("ANA") test, the results of which indicated the possibility of connective tissue disease, systemic lupus, Sjorgen' syndrome, Raynaud's Disease or systemic sclerosis. (R. 124). Strong's ANA was positive at 1:40, which was an equivocal finding; results of 1:320 or greater are considered significant. (R. 124). Dr. Kahn further referred Strong to have a nerve conduction study. (R. 162-163). The study showed that Strong had late responses in her median motor and left ulnar motor nerve at the wrist, but concluded that there was no electrodiasnostic evidence of carpal tunnel syndrome or peripheral neuropathic process in the left upper extremity. (R. 162-163).

In May 1995, Dr. Kahn's office notes indicated that Strong was complaining of numbness and tingling in her left hand, which had extended to her entire left side, and blurred vision. (R. 145). Dr. Kahn noted that Strong had decreased pinprick sensation on her left arm and leg. (R. 145). His notes also indicated that the possibility of brain lesions needed to be ruled out, and thus ordered Strong to undergo an MRI. (R. 145).

Also in May 1995, Dr. Kahn referred Strong to Steven Meyers, M.D., a neurologist. Dr. Meyers found a decreased pinprick sensation in Strong's left arm and leg, and normal motor strength with a slightly hesitant, but otherwise normal gait. (R. 109). He also recommended an MRI. (R. 109).

In June 1995, Strong's MRI results indicated that there were numerous prominent areas of abnormal increased signal intensity within the deep white matter

regions and basal ganglia of her brain, in addition to numerous smaller areas of abnormal increased signal intensity in the preventricular white matter of the centrum semiovale. (R. 93). Further, there was a prominent focal lesion within the pons consistent with additional chronic infarcts. (R. 93).

In August 1995, Dr. Kahn referred Strong to Bruce Johnson, M.D., a rheumatologist. (R. 103-108). Dr. Johnson diagnosed Strong as suffering from discoid lupus and micro-vascular central nervous system ("CNS") infarcts. (R. 103-108). Dr. Johnson opined that Strong had mini strokes and/or mini-cerebral vascular accidents, probably caused by chronic Prednisone use. (R. 103-108).

In December, 1995, the Commission's medical consultants reviewed Strong's medical evidence and completed a standard assessment form, checking boxes to indicate her exertional limitations but not providing any additional explanation for its determinations. The assessment concluded that Strong had the residual functional capacity to occasionally lift fifty pounds, frequently lift twenty-five pounds, sit for six hours in an eight-hour day, and stand six hours in an eight hour day. (R. 127-134). In short, the examiners concluded that Strong could perform medium work that did not involve climbing ladders, ropes, or scaffolds (R. 127-134).

In January 1996, Dr. Kahn's records indicated that Strong had decreased sensation on the right side of her body, and a loss of fine motor coordination of both hands. (R. 137). In February 1996, Dr. Kahn diagnosed Strong as suffering from systemic lupus with multiple brain infarcts and right side hemiparesis (muscular weakness or paralysis affecting one side of the body). (R. 154).

In January 1997, the Social Security Administration referred Strong to Claude

Hamilton, M.D. for a neurological consultative examination. (R. 191-199). Dr. Hamilton noted that Strong's left-hand grasp was normal and right-hand grasp was mildly decreased; dexterity was also mildly decreased. (R. 193). Strong's gait was mildly abnormal; she could walk fifty feet without a cane but walked slowly, hesitantly, and in short steps. (R. 194). Strong could hop twice before she had to hold on to the wall to keep from falling. (R. 194). There also appeared to be a mild decreased sensation to light touch, pin and temperature in the arms and legs, in addition to mild decreased sensation to vibration in the feet and hands. (R. 194).

Dr. Hamilton stated that it was unclear if Strong suffered from discoid or systemic lupus. (R. 195). Further, Dr. Hamilton stated that Strong's complaints outweighed her physical findings, but that her prognosis was guarded. (R. 194).

Dr. Hamilton opined that Strong could occasionally lift and carry twenty to thirty pounds, and frequently do the same with ten to twenty pounds. (R. 197). Strong could stand and/or walk four to eight hours in an eight hour day, with one to two hours of those activities without interruption. (R. 197). Further, Dr. Hamilton concluded that Strong's impairment affected handling, feeling, pushing and pulling, as well as her ability to operate at heights or with moving machinery. (R. 198).

H. Lang, M.D. treated Strong from April 1999 to September 2000. (R. 332-338). Strong complained of pain in her fingers and left hip, shortness of breath, chest pain, difficulty walking, knee weakness and falling. (R. 333-338). Dr. Lang referred Strong to have a stress test on September 2000; the test concluded that Strong had moderate exercise tolerance, adequate heart rate response, and no heart problems.

## Medical Expert Testimony

At the hearing before ALJ McGuire, Dr. Zitman testified at the request of the Administration. Dr. Zitman opined that Strong should be limited to light work that did not involve ladders, scaffolds, or dangerous moving machinery. (R. 247, 253-254). Dr. Zitman stated that the medical evidence supported a diagnosis of discoid lupus, an autoimmune disease. (R. 246). Dr. Zitman asserted that Strong may have more medical problems than those documented in the record; he opined that Strong had some kind of autoimmune disease with "something going on" in her brain, and that he would conduct further testing if Strong was his patient.[3] (R. 272-274). Dr. Zitman also opined that Strong needed another MRI to see if the condition had progressed because in his opinion the medical evidence suggested problems with her lumbar sacral spine and sciatic radiation down her right leg. (R. 274). Further, Dr. Zitman stated that if Strong's testimony would be considered in addition to the medical record, he would limit Strong to sedentary work.[4]

## Vocational Testimony

At the hearing before ALJ McGuire, Vocational Expert ("VE") Cheryl Hoiseth

---

[3] Dr. Zitman opined: "with the bit of objective evidence we have, we know she's got . . . something going on in her brain . . . She could have a discogenic disease of her spine with radiating down the leg, which whenever that thing causes pain many people fall right down. And it happens all the time. . . With the sensory manifestations that are going on this length of time and with these findings in the brain, one would have to consider [Multiple Sclerosis] very, very seriously. . . She needs some very sophisticated tests to see if there is a progressive disease. I have a feeling that there is a lot more going on. . . But the symptoms are rather specific of a neurological disorder, either involving the spine or diffuse neurological disorder . . . they sound credible to me." (R. 272 -273).

[4] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567.

testified that Strong's CMA job from 1989 to 1990 was semi-skilled and at the light exertional level, and the CMO job from 1993 to 1995 was also semi-skilled and at the medium exertional level. (R. 278).

## Standard of Review

In reviewing the final decision of the Commissioner, this Court must accept as conclusive the findings of fact made by the ALJ if they are supported by substantial evidence. Section 405(g). "Although a mere scintilla of proof will not suffice to uphold the Commissioner's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1972). If the record contains such support, the court must affirm the decision of the Commissioner unless she made an error of law. *Veal v. Bowen*, 833 F2d 693, 696 (7th Cir. 1987). The court may not re-weigh the evidence, re-evaluate the facts, or substitute its own judgment in determining whether a claimant is or is not disabled. *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the Commissioner's designate, the ALJ). *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). We may not reconsider credibility determinations by the ALJ. *Prince v. Sullivan*, 933 F.2d 598, 601-02 (7th Cir. 1991). Thus, a plaintiff's proof must show that no reasonable person, based upon the record as a whole, could have found as the Commissioner did. *Rucker v. Shalala*, 894 F.Supp. 1209, 1213-14 (S.D. Ind. 1995).

## Analysis

Strong makes three main arguments to support her claim. First, she argues that the ALJ's determination that she was capable of performing the full range of medium work was not supported by substantial evidence and was premised upon an error of law. Second, she contends that the Appeals Council made an error of law by substituting its lay opinion for that of a physician. Third, she argues that the Commissioner's own regulations instruct a finding that she is disabled. We need only reach the first two arguments.

To determine whether an adult claimant is disabled under the Act and thus entitled to benefits, the ALJ must undertake a five-step process which assesses whether the individual is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental ailment. Sections 423(d)(1)(A), 1382c(a)(3)(A). Furthermore, an individual is considered disabled only if she is neither able to perform any of her previous work nor any other work existing in significant numbers in the national economy. Sections 423(d)(2)(A), 1382c(a)(3)(B); Reg. §§ 404.1520(e), (f), 416.920(e)(f). In making her determination, the ALJ applied the standard five- step process set forth in the regulations, which required her to evaluate, in sequence:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment or combination of impairments severe?

(3) Do his or her impairments meet or exceed any of the specific impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 which the Secretary acknowledges to be conclusively disabling?

(4) If the impairment has not been listed by the Secretary as conclusively

-9-

disabling, given the claimant's residual function capacity, is the claimant unable to perform his or her past relevant work?

(5) Is the claimant unable to perform any other work in the national economy given his or her age, education or work experience?
*Ward*, 2000 WL 1029170 at *4 citing, Reg. § 416.920(a)-(f); *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir.1992).

Under the five part sequential analysis, "[a]n affirmative answer leads to either the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a finding that the claimant is not disabled." *Zalewski v. Heck*, 760 F.2d 160, 162 n. 2 (7th Cir.1985). Strong's arguments focus on step four of this inquiry.

In undertaking the five-step process, ALJ McGuire first determined that there was no evidence of gainful work activity since the onset date of this case (step one). (R. 228). Next, the ALJ determined that Strong's RFC limitations meet the definition of severe (step two). (R. 228). The ALJ found that Strong did not have an impairment or combination of impairments listed in or medically equal the level of severity to one listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (step three). (R. 228). At step four, the ALJ found that in spite of Strong's impairments, she still maintained an RFC to perform a full range of medium work. (R. 233). Further, the ALJ concluded that Strong's residual functional capacity of medium work was entirely consistent with the performance of the job of circuit board assembler, whether at the light or medium exertional level. (R. 233).

Plaintiff argues that the ALJ committed legal error because the record does not support the finding that Strong is capable of performing medium work. "We afford an ALJ's credibility determination special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809,

811 (7th Cir.2000). We will not normally disturb an ALJ's credibility determinations unless they are "patently wrong." *Zurwaski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). However, we cannot uphold the ALJ's decision when "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Shramek*, 226 F.3d at 811. The ALJ's credibility determination must include reasons for the finding that are supported by record evidence and must be specific enough to show the weight the ALJ gave to the claimant's testimony. *Zurwaski*, 245 F.3d at 887 (citing Social Security Ruling 96-7p).

The ALJ discounted the opinions of one of Strong's treating physicians, Dr. Kahn, because his opinions were not well explained and internally inconsistent. A physician opinion "may be discounted if it is internally inconsistent, or inconsistent with other evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The ALJ noted that Dr. Kahn's RFC assessment indicated that Strong could sit for six hours out of an eight-hour day, and lift or carry up to, but not including, ten pounds. The ALJ noted that Dr. Kahn opined that Strong was disabled due to systemic lupus, when the record showed that Strong suffered from discoid lupus. Further, the ALJ stated that in part I of the assessment, Dr. Kahn found that Strong could stand/walk for no more than two hours at a time, but then stated that Strong could not stand/walk for more than one hour out of an eight-hour day. Therefore, the ALJ has minimally articulated his reasons for discounting the weight of Dr. Kahn's assessment.

Similarly, the ALJ discounted the RFC assessment of Dr. Zitman, the medical expert that testified at the hearing, because he incorporated the subjective complaints

-11-

of the Plaintiff regarding falling and fatigue into his assessment. The ALJ merely stated that he did not find the subjective complaints of the claimant to be credible, and thus, any assessment that incorporated the above-mentioned subjective complaints would be given little weight. The ALJ then proceeded to cite specific instances where Strong contradicted herself, or was vague in her testimony. For example, the ALJ stated that Strong first stated that she had right leg and hip pain twice a week, but upon further inquiry changed her testimony and stated that she had this pain <u>at least</u> twice a week. Strong stated that she had problems falling since 1995, but upon further questioning, Strong stated that it could have been 1995 or 1996, that she was not sure. Further, Strong testified that she falls once per week, but the ALJ keyed on the fact that treatment notes from Dr. Lang noted that she had fallen three times per year. As noted above, the ALJ's credibility determinations are afforded "special deference" and should only be disturbed if they are "patently wrong." Therefore, as required, we cede that special deference to the ALJ, and find that there is no evidence that his credibility determination is patently wrong.

We are cognizant that the ALJ is not required to discuss every piece of evidence he took into consideration in reaching his decision. *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984). However, we do not feel that the ALJ has made an "accurate and logical bridge" between the evidence and his determination that Strong retains the RFC to perform medium work. See *Shramek*, 226 F.3d at 811. The ALJ fails to give weight to any of the RFC assessments of any of the doctors. As noted above, the ALJ discounted the residual assessments of both Dr. Kahn and Dr. Zitman, and this Court does not disturb that determination. The ALJ mentions, but does not credit or discredit,

the RFC assessment of Dr. Hamilton, who was the doctor appointed by the Social Security Agency to make an assessment of Strong, and the doctor ALJ Haworth relied upon in 1997 to make the determination that Strong could perform light work. As already noted, Dr. Hamilton concluded that Strong was capable of frequently lifting/carrying ten to twenty pounds, occasionally lifting/carrying twenty to thirty pounds, standing walking four to eight hours, and was unimpaired in her sitting capacity.

The ALJ based his determination that Strong is capable of performing the full range of medium work largely on an evaluation by the state agency medical consultants in 1995 and another one on April 4, 1996. (R. 233, 127-134). However, the eight-page report of the medical consultants is merely a pre-printed form with standardized boxes to check off. (R. 127-134). The form is devoid of any explanations, which is against the form's own instructions;[5] there is no description of evidence that substantiates the reporter's conclusions. (R.127-134).

We are guided by the ALJ's own reasoning in reaching our determination. The ALJ discounted the RFC of Dr. Kahn because it "is not well explained." (R. 232). When we observe Dr. Kahn's assessment, it is also a pre-printed document with boxes to mark. (R. 205). Dr. Kahn's two-page assessment report is different in physical appearance from the report of the state agency examiners, but is essentially similar in substance. And like the state agency form, Dr. Kahn fails to provide any explanation of his determinations. Thus, the state agency medical consultants' assessment on which

---

[5] The form states: "Check the blocks which reflect your reasoned judgment .... Describe how the evidence substantiates your conclusions (Cite specific clinical and laboratory findings, observations, lay evidence, etc.)." (R. 127).

-13-

the ALJ relied is also "not well explained", by the ALJ's own reasoning. The ALJ does not explain why he decided to give more weight to the assessment of the state agency medical consultants than to Dr. Kahn's, even though they contain similar flaws. The ALJ merely states that he agrees with the state medical examiners assessment.

Furthermore, as noted by the Plaintiff, the assessments of the state agency medical consultants occurred in 1995 and in April 4, 1996; both dates are before Plaintiff's alleged onset date of disability of April 29, 1996, which was agreed to by the ALJ. We agree with plaintiff that her RFC before the onset date is unimportant and irrelevant to whether she was disabled after that date. Thus, the ALJ's reliance on this assessment is misplaced. When we eliminate the assessment by the state medical examiners, we are left without evidence that would support the ALJ's conclusion that Strong was limited to perform all aspects of medium work. All of the doctors that presented evidence and opinions in this case concluded that Strong could perform either light or sedentary work. Even the first hearing by ALJ Haworth on June 1997 concluded that Strong retained the residual functioning capacity to perform light work, and its conclusion was largely based on the medical opinions of Dr. Hamilton, whose opinion was neither credited nor discredited by ALJ McGuire. Therefore, ALJ McGuire has failed to make an accurate and logical bridge from all the available evidence to his conclusion that Strong has the residual functional capacity to perform medium work.

In addition, plaintiff's second argument would be sufficient on its own to reverse and remand the case. Plaintiff argues that the Appeals Council erred as a matter of law when it substituted its lay opinion regarding the significance of the MRI results for that of a physician after it reviewed the evidence and declined to assume jurisdiction. We

agree. Generally, an Appeals Council's denial of a request for review is discretionary and not subject to judicial review. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir.1997). However, if the Appeals Council's decision to deny review of the ALJ's decision is based on an error of law, the Council's decision is subject to *de novo* review. *Id.* Thus, we must determine whether the Appeals Council's denial of review after reviewing Strong's MRI report was a mistake of law.

As Strong points out, the Seventh Circuit has stated that "judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990). The Appeals Council cannot rely on its own lay opinion, instead they must rely on the testimony of medical experts and the medical opinions of the Social Security Administration as reflected in its regulations. *Id.* at 118-119. Because the Appeals Council evaluated the raw MRI results without expert medical testimony, "the Appeals Council had no way of knowing their possible relevance." *LaPorta v. Apfel*, 2000 WL 294829, *1 (N.D.Ill 2000) *citing Maxwell v. Sullivan*, 792 F.Supp. 582, 593 (N.D.Ill. 1992). The Appeals Council committed legal error by substituting its lay opinion regarding the significance of the MRI results for that of a physician.

The Commissioner argues that the Appeals Council's decision not to assume jurisdiction is a discretionary decision not subject to judicial review, and that in any case the new medical evidence could only be considered by this Court for purposes of a sentence six remand under 42 U.S.C. § 405(g). However, as we have noted, the Appeals Council committed an error of law, and Strong does not base her appeal on

sentence six grounds. Further, a number of opinions from this jurisdiction have held that Administrative Law Judges and the Appeals Council should not make medical judgments based on bare medical findings. See, e.g., Bauzo v. Bowen, 803 F.2d 917, 926 (7th Cir.1986) ("Neither the Appeals Council nor this court is qualified to make a medical judgment about residual functional capacity bases solely on bare medical findings as to [a] claimant's ... condition."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir.1982) (Because the ALJ as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony); Maxwell v. Sullivan, 792 F.Supp. 582, 593 (N.D.Ill. 1992) (holding that the Appeals Council improperly determined that a CT scan and an MRI were not material without the benefit of expert input). Therefore, the Appeals Council should have referred the case to the Medical Support Staff for interpretation of the MRI results.

## Conclusion

For all the above stated reasons we reverse and remand this case to the Commissioner for further determinations consistent with this opinion, both as to the significance of Strong's MRI as well as her current RFC. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: October 22, 2002